**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

SOUTHEASTERN CONSTRUCTION
& REHAB SPECIALISTS, LLC,
  Plaintiff,

vs.                                                                 Case No.: 5:20-cv-00132

GAC CONTRACTORS, INC.,
And BERKLEY INSURANCE COMPANY,
  Defendants,

_____

GAC CONTRACTORS, INC,
  Third-Party Plaintiff,

vs.

PALM BAY EDUCATION GROUP, INC. and
THE GUARANTEE COMPANY OF
NORTH AMERICA USA,
  Third-Party Defendants.

_____

## FOURTH PARTY COMPLAINT

Palm Bay Education Group, Inc., pursuant to Federal Rule of Civil Procedure 14(a)(5), hereby brings this Fourth Party Complaint against Fourth Party Defendants Hagerty Consulting Services, Inc., DAG. Architects, Inc., and Owen Gipson, and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. This is an action for monetary damages in excess of $75,000.00. Because this fourth party action is ancillary to the main action, and shares, interrelated facts, no independent basis of jurisdiction is required.

2. Palm Bay Education Group ("Palm Bay") is a Florida corporation with its primary place of business in Panama City, Bay County, Florida.

1

3.  Fourth party defendant Hagerty Consulting Services, Inc. ("Hagerty") is an Illinois corporation with its primary place of business in Cook County, Illinois.

4.  DAG Architects, Inc. ("DAG"), is a Florida corporation with its primary place of business in Destin, Okaloosa County, Florida.

5.  Defendant Gipson ("Gipson") is a Florida resident.

6.  This Court has jurisdiction over Hagerty because it engaged in continuous and substantial activities in the State of Florida, and because its conduct, as described below, caused harm to Palm Bay in Bay County, Florida. This Court has jurisdiction over DAG as a resident corporation, and over Gipson as a resident of this district.

7.  Venue is proper in the Panama City Division of the U.S. District Court for the Northern District of Florida, because this matter is already pending here, and Palm Bay's cause of action accrued here.

## GENERAL ALLEGATIONS

8.  Palm Bay is the owner and operator of the Palm Bay Academy, a charter school in Panama City, Florida.

9.  On October 10, 2018, Hurricane Michael slammed into Panama City, causing substantial damage to Palm Bay Academy's campus.

10.  As Palm Bay began to assess the scope of repairs, it realized it would likely require funding through a FEMA grant program.

11.  Hagerty held itself out to Palm Bay as an expert in numerous FEMA funding processes, including those relevant to Palm Bay's reconstruction efforts.

12.  On February 13, 2019, Palm Bay and Hagerty entered into a Professional Services Contract that is attached to this fourth party complaint as Exhibit "A." That contract called for

Hagerty to provide consulting services at a not-to-exceed price of $200,000.00. The Professional Services Contract provides, at Exhibit A, an extensive scope of services related to evaluating and advising as to how Palm Bay, a novice to the grant process, could navigate and ultimately obtain a FEMA grant. Hagerty agreed to evaluate the damage to Palm Bay Academy, assist in developing a scope of work, and provide personnel and resources in furtherance of technical assistance and financial management, among other functions, that would all be part of the FEMA grant process.

13. On February 22, 2019, Palm Bay and DAG entered the Standard Form of Master Agreement Between Owner and Architect for Services (the "DAG Contract"), with exhibits, attached to this fourth party complaint as Exhibit "B." Gipson would serve as the architect employed by DAG who was primarily responsible for fulfilling DAG's obligations. Although the DAG Contract does a far better job of listing what DAG and Gipson did not agree to do, rather than an actual scope of work, it is clear from the parties' course of performance that DAG and Gipson provided construction oversight services, including, without limitation, providing specifications for reconstruction and repair, overseeing the work of Palm Bay's contractors and subcontractors, and evaluating and approving pay applications submitted by the general contractor over the course of the project.

14. On March 18, 2019, Palm entered a contract with GAC (the "Prime Contract") to repair the hurricane damage at Palm Bay Academy.

15. On April 25, 2019, GAC subcontracted a substantial portion of the work in the Prime Contract to SECR.

16. Palm Bay executed a notice of commencement on March 27, 2019, and SECR performed work on the project until March of 2020.

17. While GAC and SECR were engaged in attempting to perform their obligations under

3

the Prime Contract, Hagerty provided a series of consultants who were personally involved in participating in team meetings and helping Palm Bay navigate the FEMA grant process. Although Palm Bay did in fact have first party property insurance that would cover a portion of the work, it was understood from the outset that FEMA grant funds would be required to complete it.

18. Over the same time Gipson, as DAG's on-site representative, oversaw construction, attended team meetings, and reviewed pay applications, among other functions on the project. Gipson approved a number of pay applications from GAC that ultimately exhausted Palm Bay's insurance policy limits, although GAC provided inadequate backup documentation for its pay applications, and the scope of work for which GAC sought to be paid (and, indirectly, SECR) was frequently not in accordance with the agreed scope of work and exceeded what was actually completed on-site.

19. By the fall of 2019, it became apparent that GAC and SECR's charges against Palm Bay on the project would, legitimately or not, far exceed the amount of insurance available. At this point, Hagerty provided specific guidance to Palm Bay that it needed to collect adequate documentation from GAC and SECR to serve as backup for a FEMA grant application. Hagerty warned that FEMA maintained a statutory post-grant audit regime that could expose Palm Bay to liability if it paid an invoice and could not later provide FEMA with backup to show how the contractor, subcontractor, or materialman calculated its charges. Hagerty repeatedly admonished Palm Bay, "You shouldn't submit to FEMA a grant application on an invoice you would not pay yourself."

20. Ultimately, after several months of trying, GAC and SECR were unable to collect adequate backup documentation for Hagerty to advise that Palm Bay should submit a grant application to FEMA. SECR ultimately left the job, and work largely stopped in the spring of 2020.

21. Meanwhile, Gipson began to realize that he had authorized payment on GAC pay applications that were either excessive or lacked adequate backup as they ultimately exhausted Palm Bay's insurance. Gipson therefore, in 2020, began what amounted to an audit of the pay applications Palm Bay had already processed and paid, discovering in the course of his exercise that Palm Bay appeared to have exhausted its insurance by overpaying as related to the work actually completed.

22. Throughout 2020, Hagerty continued to advise Palm Bay that it should not submit a FEMA grant application without backup from the contractors. In reliance on this advice, Palm Bay continued in its attempt to work with the with GAC and SECR to accumulate adequate backup documentation to get everyone paid.

23. Ultimately SECR filed suit against GAC, Palm Bay, and Berkley Insurance Company, the payment bond surety, claiming in this case that it was owed over $6 million. Palm Bay was ultimately dropped from that complaint, but then both GAC and SECR filed complaints against Palm Bay in this action, seeking money damages.

24. In April 2021, it appears that someone on Palm Bay's behalf, but without Palm Bay's knowledge, submitted information to FEMA indicating that the amount of the loss was not in excess of Palm Bay's policy limits. The only other entity with access to the FEMA portal who may have participated in this was Hagerty. Hagerty never informed Palm Bay of FEMA's supposed determination, which was buried in an internal FEMA memo placed on the FEMA portal, and Palm Bay continued to believe resolving this lawsuit simply involved working with GAC and SECR to obtain backup documentation.

25. In April 2022, Hagerty presented a corporate representative for deposition in this case. Upon information and belief, this corporate representative had played no direct role in Hagerty's

provision of services to Palm Bay. Over the course of the deposition, for the first time, Hagerty asserted there was never an issue regarding backup documentation, that FEMA would reimburse whatever Palm Bay actually paid for repairs, that FEMA had determined in 2021 that insurance was adequate to cover this loss, and that Palm Bay knew this. The latter statement was simply false, and the other statements directly contradicted what Hagerty had been telling Palm Bay since February 2019.

26. All conditions precedent to the bringing of this action have been satisfied or waived.

<u>**COUNT ONE**</u>
<u>**BREACH OF CONTRACT AGAINST HAGERTY**</u>

27. Palm Bay restates and incorporates those allegations in paragraphs 1 through 26 as if originally set forth herein.

28. Hagerty had a duty under the Professional Services Contract to competently provide consulting services as more specifically set forth in that document. Hagerty was also obligated under the Professional Services Contract to adequately staff this project with competent consultants.

29. Hagerty breached its contractual obligations to Palm Bay by failing to competently evaluate the requirements for a FEMA grant application, failing to staff the Palm Bay project with individuals competent to provide advice regarding that process, failing to competently evaluate the materials assembled by or on Palm Bay's behalf for the purpose of applying for a grant, and providing false and misleading advice to Palm Bay regarding both the requirements for a FEMA grant and the status of Palm Bay's paperwork with FEMA.

30. As a direct and proximate result of Hagerty's breach, Palm Bay has been damaged to include, but not limited to, its exposure for monetary damages in this lawsuit, delay in obtaining FEMA grant money to fund the project, to the extent those funds are available at all nearly four

years after the storm, and the increased operating costs associated with running the school while its facilities were incomplete or in disrepair, and attorney's fees and costs incurred in defending this lawsuit.

WHEREFORE, Palm Bay respectfully requests that this Court enter judgment in its favor, and against Hagerty, and award compensatory damages, prejudgment interest, costs of suit, and such other relief as this Court deems proper.

<u>**COUNT TWO**</u>
<u>**BREACH OF EXPRESS WARRANTY AGAINST HAGERTY**</u>

31. Palm Bay restates and incorporates those allegations in paragraphs 1 through 26 as if originally set forth herein.

32. The Professional Services Contract, at paragraph 4.3, includes the following: Provider warrants that Provider shall throughout the term of this contract… perform all tasks required under the scope of services with the same degree of skill and care as members of the same profession operating in the State of Florida.

33. Hagerty breached its express warranty obligation to Palm Bay by failing to adequately staff this project with competent personnel.

34. As a direct and proximate result of Hagerty's breach, Palm Bay has been damaged to include, but not limited to, its exposure for monetary damages in this lawsuit, delay in obtaining FEMA grant money to fund the project, to the extent those funds are available at all nearly four years after the storm, and the increased operating costs associated with running the school while its facilities were incomplete or in disrepair, and attorney's fees and costs incurred in defending this lawsuit.

WHEREFORE, Palm Bay respectfully requests that this Court enter judgment in its favor, and against Hagerty, and award compensatory damages, prejudgment interest, costs of suit, and

such other relief as this Court deems proper.

**COUNT THREE**
**NEGLIGENCE AGAINST HAGERTY**

35. Palm Bay restates and incorporates those allegations in paragraphs 1 through 26 as if originally set forth herein.

36. Hagerty had a duty to exercise reasonable care in the provision of professional services to Palm Bay related to the FEMA grant process.

37. Hagerty breached its common law obligations, to the extent they were not subsumed in the contract, by failing to competently evaluate the requirements for a FEMA grant application, failing to staff the Palm Bay project with individuals competent to provide advice regarding that process, failing to competently evaluate the materials assembled by or on Palm Bay's behalf for the purpose of applying for a grant, and providing false and misleading advice to Palm Bay regarding both the requirements for a FEMA grant and the status of Palm Bay's paperwork with FEMA.

38. As a direct and proximate result of Hagerty's breach, Palm Bay has been damaged to include, but not limited to, its exposure for monetary damages in this lawsuit, delay in obtaining FEMA grant money to fund the project, to the extent those funds are available at all nearly four years after the storm, and the increased operating costs associated with running the school while its facilities were incomplete or in disrepair, and attorney's fees and costs incurred in defending this lawsuit.

WHEREFORE, Palm Bay respectfully requests that this Court enter judgment in its favor, and against Hagerty, and award compensatory damages, prejudgment interest, costs of suit, and such other relief as this Court deems proper.

## COUNT FOUR
## BREACH OF CONTRACT AGAINST DAG

39. Palm Bay restates and incorporates those allegations in paragraphs 1 through 26 as if originally set forth herein.

40. DAG breached its contract with Palm Bay by failing to adequately provide adequate foresight of the project, failure to fully and competently review and approve pay applications, and failing to provide adequate detail at the front end of the project to the contractors, resulting in a flurry of change orders and direction from DAG expanding the scope of work that could have been avoided had the plans been more complete at the outset.

41. As a direct and proximate result of DAG's breach, Palm Bay has been damaged to include, but not limited to, its exposure for monetary damages in this lawsuit, overpayments to GAC and SECR on inflated invoices, and attorney's fees and costs incurred in defending this lawsuit.

WHEREFORE, Palm Bay respectfully requests that this Court enter judgment in its favor, and against DAG, and award compensatory damages, prejudgment interest, costs of suit, and such other relief as this Court deems proper.

## COUNT FIVE
## NEGLIGENCE AGAINST DAG

41. Palm Bay restates and incorporates those allegations in paragraphs 1 through 26 as if originally set forth herein.

42. DAG had a duty to exercise reasonable care in the provision of professional services to Palm Bay related to oversight of the Palm Bay reconstruction project.

43. DAG breached its common law obligations, to the extent they were not subsumed in the contract, by failing to adequately provide oversight on this project, make that failure to provide

adequate oversight of the project, failure to fully and competently review and approve pay applications, and failing to provide adequate detail at the front end of the project to the contractors, resulting in a flurry of change orders and direction from DAG expanding the scope of work that could have been avoided had the plans been more complete at the outset.

44. As a direct and proximate result of DAG's breach, Palm Bay has been damaged to include, but not limited to, its exposure for monetary damages in this lawsuit, overpayments to GAC and SECR on inflated invoices, and attorney's fees and costs incurred in defending this lawsuit.

WHEREFORE, Palm Bay respectfully requests that this Court enter judgment in its favor, and against DAG, and award compensatory damages, prejudgment interest, costs of suit, and such other relief as this Court deems proper.

## COUNT SIX
## CONTRACTUAL INDEMNITY AGAINST DAG

45. Palm Bay restates and incorporates those allegations in paragraphs one through 26 as if originally set forth herein.

46. At paragraph VI (1) to Addendum A to the DAG Contract, DAG obligates itself to indemnity Palm Bay as more particularly set forth therein for losses caused by the negligence of DAG or its employees or agents.

47.  Palm Bay is entitled to indemnity under this provision because it has suffered damages within the provisions of this indemnity clause. Those damages include, without limitation, its exposure for monetary damages in this lawsuit, overpayments to GAC and SECR on inflated invoices, and attorney's fees and costs incurred in defending this lawsuit.

WHEREFORE, Palm Bay respectfully requests that this Court enter judgment in its favor, and against DAG, and award compensatory damages, prejudgment interest, costs of suit, and such

other relief as this Court deems proper.

<b>COUNT SEVEN</b><br><b>NEGLIGENCE AGAINST GIPSON</b>

48. Palm Bay restates and incorporates those allegations in paragraphs 1 through 26 as if originally set forth herein.

49. Gipson had a duty to exercise reasonable care in the provision of professional services to Palm Bay related to oversight of the Palm Bay reconstruction project.

50. Gipson breached his common law obligations by failing to adequately provide oversight on this project, make that failure to provide adequate oversight of the project, failure to fully and competently review and approve pay applications, and failing to provide adequate detail at the front end of the project to the contractors, resulting in a flurry of change orders and direction from Gipson expanding the scope of work that could have been avoided had the plans been more complete at the outset.

51. As a direct and proximate result of Gipson's breach, Palm Bay has been damaged to include, but not limited to, its exposure for monetary damages in this lawsuit, overpayments to GAC and SECR on inflated invoices, and attorney's fees and costs incurred in defending this lawsuit.

WHEREFORE, Palm Bay respectfully requests that this Court enter judgment in its favor, and against Gipson, and award compensatory damages, prejudgment interest, costs of suit, and such other relief as this Court deems proper.

<b>DEMAND FOR JURY TRIAL</b>

Pursuant to Fed. R. Civ. P. 38 (b), Palm Bay demands a trial by jury on any issue triable of right by a jury.

## <u>CERTIFICATE OF SERVICE</u>

   I HEREBY CERTIFY that a true and accurate copy of the foregoing has been furnished to all parties via the e-filing portal on this 25th day of May 2022:


       DUNLAP & SHIPMAN, P.A.


       */s/ Michael P. Dickey*
       Michael P. Dickey
       Florida Bar #115606
       836 Jenks Avenue
       Panama City, FL 32401
       (850) 919-3375
       Primary: mdickey@dunlapshipman.com
       Secondary: stacy@dunlapshipman.com

       ATTORNEY FOR DEFENDANT PALM BAY